USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 0 3 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JESUS MANUEL DELGADO TORRES,

                         Plaintiff,                13 Civ. 730 (KBF)

            -v-                                  OPINION & ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

      Plaintiff Jesus Manuel Delgado Torres seeks review of the decision by Defendant Commissioner of Social Security ("the Commissioner" or "defendant") denying him Social Security Supplemental Security Income (SSI) benefits on the basis of low back pain, gastritis, and psychiatric problems. (Compl. ¶ 1, ECF No. 1; R. at 18.)

      Plaintiff first filed an application for SSI on June 10, 2010, alleging that he was disabled as of March 30, 2007. (R. at 101-07.) On July 30, 2010, defendant denied plaintiff's application on initial review. (R. at 38-42.) On July 5, 2011, plaintiff appeared pro se before an Administrative Law Judge ("ALJ") for an administrative hearing, which lasted 11 minutes. (R. at 27-34, 44-45.) On August 5, 2011, the ALJ issued a decision finding that plaintiff had not established that he was disabled, as defined by the Act, and thus was not entitled to SSI. (R. at 10-21.)

On December 3, 2012, the ALJ's decision became defendant's final decision when the Appeals Council denied plaintiff's request for review. (R. at 1–4.)

On February 1, 2013, plaintiff filed this action seeking judicial review of the ALJ's decision. (ECF No. 1.) Now before the Court are plaintiff and defendant's motions for judgment on the pleadings. (ECF Nos. 13, 15.) For the reasons set forth below, plaintiff's motion is GRANTED and defendant's motion is DENIED. This matter is remanded for further proceedings before the Commissioner.

## I.   FACTUAL BACKGROUND

The Court recites here only those facts relevant to its review.[1]

At his 11-minute hearing on July 5, 2011, plaintiff testified that he was born in Puerto Rico, and that he had worked for a children's foundation in Puerto Rico and in a factory in the United States before he stopped working due to back pain, headaches, and depression. (R. at 28–31.) Plaintiff stated that he was being treated for depression and saw a psychiatrist (Dr. Gutierrez) every eight weeks; while medication helped his emotional condition "a little bit," he did not think that his emotional condition had gotten any better with medication. (R. at 31.) Plaintiff stated that he was limited to sitting for 15 minutes at a time before his back would hurt and he had to get up, and that he was limited to walking three blocks slowly at a time before he had to stop due to breathing problems. (R. at 30–32.)

The transcript from the hearing is eight pages long, of which five consists of the ALJ's examination of plaintiff. (See R. at 27–34.) As stated, the hearing lasted for 11 minutes. (See id.) Although the ALJ stated that the claimant "does

---

[1] A thorough summary of plaintiff's medical history is set forth in the administrative record.

adequately communicate in English," a Spanish-language interpreter was used at the hearing. (R. at 27.) Plaintiff testified that he saw Dr. Gutierrez rather than a Dr. Silverman because "sometimes they didn't have a translator so they changed me to a doctor who speaks Spanish." (R. at 32.)

The record contains numerous medical reports from various physicians.

For example, on October 19, 2009, plaintiff saw Dr. Luis Ang at Fordham Tremont Community Mental Health Center ("FTCMHC"). (R. at 181–86.) Dr. Ang noted that plaintiff's speech and language abilities were intact; that his subjective mood was anxious and depressed; and that he had no abnormalities regarding his thought process or content. (R. at 183–84.) Dr. Ang diagnosed major depression. (R. at 186.)

In November 2009, Dr. A. Salem also diagnosed plaintiff with major depression, recurrent with psychotic feature in partial remission, and polysubstance dependence. (R. at 189, 191.) On May 13, 2010, Dr. Salem diagnosed major depression disorder in remission and renewed plaintiff's medications. (R. at 211.)

In December 2009 and January 2010, plaintiff reported that he was feeling better and less anxious and depressed. (R. at 201–02.) On February 24, 2010, plaintiff reported that he was doing well, and had no hallucinations or side effects from medication. (R. at 204.) In early March 2010, however, plaintiff claimed to see shadows and felt that people were following him. (R. at 206.) On May 12, 2010, plaintiff reported that he was feeling stressed and having trouble sleeping. (R. at 210.)

On July 12, 2010, consulting psychologist Dr. Dmitri Bougakov examined plaintiff, who complained of low energy, poor appetite, trouble sleeping, and problems with concentration. (R. at 218.) Dr. Bougakov observed that plaintiff's language functioning was adequate and his thought process was coherent; that his concentration, attention, and memory were mildly impaired; and that his intellectual functioning was below average. (R. at 217–18.) Dr. Bougakov further stated that plaintiff did not have vocational difficulties other than some mild difficulties learning new tasks and performing complex tasks. (R. at 218.) Dr. Bougakov diagnosed opioid and cocaine dependence in remission and depressive disorder. (Id.)

On July 20, 2010, plaintiff was examined by a consulting internal medicine physician, Dr. Catherine Pelczar-Wissner, who diagnosed gastritis, back pain, anxiety, and depression, and who found plaintiff to have no objective limitations. (R. at 222.) In August 2010, plaintiff underwent a physical examination that resulted in normal findings. (R. at 270–305.) A screening test revealed moderate depression. (R. at 295.)

On September 13, 2010, Dr. Bhawesh Patel opined, inter alia, that plaintiff could sit, stand, or walk continuously for two hours each, and that, in an eight-hour workday, he could sit up to four hours and stand and walk for up to two hours each. (R. at 246–51.)

On September 17, 2010, treating psychiatrist Dr. Luis Ang completed two forms with conflicting opinions. In his "medical source statement," Dr. Ang opined

4

that plaintiff had, <u>inter alia</u>, no limitations in understanding, remembering and carrying out simple instructions, and in making simple work-related decisions. (R. at 254.) Dr. Ang also believed that plaintiff's ability to respond appropriately to supervision and to interact with coworkers and the public was unimpaired. (R. at 255.) However, in a separate "wellness plan report" also completed on that day, clinician Celeste Benitez and Dr. Ang indicated that plaintiff was "[u]nable to work for at least 12 months." (R. at 259.) Psychiatrist Dr. Azra Mansoor also completed a wellness plan report on December 28, 2010, which indicated that plaintiff was "temporarily unemployable." (R. at 265.)

Orthopedist Dr. Marc Silverman completed a wellness plan report on October 27, 2010, in which he diagnosed low back pain; he also noted that plaintiff had been treated with physical therapy, which had provided "some improvement." (R. at 262–63.) Dr. Silverman noted low back strain and checked a box indicating that plaintiff was "employable" and that he could perform "light weight work." (R. at 263.)

## II. STANDARDS OF REVIEW

### A. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court reviews Rule 12(c) motions for judgment on the pleadings under the same standard as Rule 12(b)(6) motions to dismiss. <u>Bank of N.Y. v. First Millennium, Inc.</u>, 607 F.3d 905, 922 (2d Cir. 2010). Therefore, "[t]o survive a Rule 12(c) motion, the complaint 'must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010)).

### B. The Disability Standard

The Commissioner will find a claimant disabled under the Act if he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner uses a five-step process when making disability determinations. See 20 C.F.R. §§ 404.1520, 416.920; DeChirico v. Callahan, 134 F.3d 1177, 1179–80 (2d Cir. 1998). The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. Part 404, Subpart P, App. 1 ["Appendix 1"]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether,

6

despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

### C. Review of the ALJ's Judgment

The Commissioner and ALJ's decisions are subject to limited judicial review. The Court may only consider whether the Commissioner has applied the correct legal standard and whether his findings of fact are supported by substantial evidence. When these two conditions are met, the Commissioner's decision is final. 42 U.S.C. § 405(g); Burgess v. Astrue, 537 F.3d 117, 127–28 (2d Cir. 2008) (citing Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) ("We set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence.").

By statute, the Commissioner is required to develop the complete medical history for at least a twelve-month period prior to the date of application. 42 U.S.C. § 423(d)(5)(B); see also Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history."). The Commissioner's regulations state that the agency will make "every reasonable effort" to help claimants obtain medical reports from medical sources. 20 C.F.R. § 416.912(d).[2] An ALJ commits legal error where he or she improperly fails to develop the record. See, e.g., Pratts v. Chater,

---

[2] "Every reasonable effort" means "an initial request for evidence from [the claimant's] medical source" and follow-up requests as necessary. 20 C.F.R. § 416.912(d)(1).

7

94 F.3d 34, 39 (2d Cir. 1996). "One of the factors which the court must consider is whether the claimant was represented by counsel at the administrative hearing." Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980).

If the Commissioner and ALJ's findings as to any fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995). Substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pratts, 94 F.3d at 37 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

### III. DISCUSSION

The ALJ conducted the five-step analysis required by 20 C.F.R. §§ 404.1520 and 416.920 without properly developing the record, and therefore committed legal error.

#### A. The ALJ's Failure to Develop the Record

The ALJ failed to affirmatively develop plaintiff's complete medical history, contrary to his obligation under law. See Shaw, 221 F.3d at 131 ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel.").

First, the ALJ failed to request reports from Dr. Gutierrez, who plaintiff had told the ALJ was his primary doctor, or to question the plaintiff about him. (See R. at 31.) The hearing transcript reflects the following exchange:

| | |
|---|---|
| Q | Now, you're seeing a Dr. Silverman. |
| A | No, Gutierrez is my doctor. |
| Q | What? |
| A | Gutierrez. |
| Q | That's the psychiatrist? |
| A | Yes. |
| Q | But there's a Dr. Silverman who wrote a report about your back. |
| A | Yes, that was my first doctor, but sometimes they didn't have a translator so they changed me to a doctor who speaks Spanish. |

(R. at 31–32.) The transcript reflects no further follow-up questioning or discussion related to Dr. Gutierrez, and the record as a whole is devoid of any report or evidence proffered by him.

The Commissioner argues that she met her duty to develop the record pursuant to 20 C.F.R. § 416.912(d) by requesting and receiving treatment notes from plaintiff's treating sources, St. Barnabas Hospital and FTCMHC. (See R. at 225.) On these particular facts, this Court disagrees. It is true that, on August 27, 2010, an ALJ advised plaintiff to obtain treatment records and a completed functional assessment from his "current treating doctor." (R. at 244–45.) In response, plaintiff submitted Dr. Ang and Dr. Patel's functional assessments. (See R. at 246–51, 254–56, 258–59.) However, the ALJ who held plaintiff's hearing did not, even after plaintiff said that Dr. Gutierrez was his doctor, ask plaintiff about Dr. Gutierrez's role vis-à-vis Dr. Ang and Dr. Patel, or inquire why plaintiff submitted those reports rather than a report from Dr. Gutierrez. (See R. at 32.) Rather, the ALJ immediately moved to the topic of plaintiff's back pain. (See id.) Nor did the ALJ follow up with either St. Barnabas Hospital or FTCMHC to procure reports or notes by Dr. Gutierrez.

Thus, when rendering his decision, the ALJ lacked information regarding the extent or nature of Dr. Gutierrez's treatment of plaintiff, if any. Rather, the ALJ relied on the sparse, limited reports of Dr. Ang and Dr. Patel. See Rosa, 168 F.3d at 80 (explaining that the ALJ erred by failing "to obtain or attempt to obtain the records of a number of other physicians identified by" the plaintiff). Defendant's claim that "the record contains records from all treating sources identified by plaintiff" (see Def.'s Mot. 15) is therefore incorrect.

The ALJ also erred by failing to resolve conflicts within Dr. Ang's reports, either through questioning or analysis in his decision. (See R. at 20.) Specifically, Dr. Ang's "wellness plan report" indicated that plaintiff was "less depressed" but suffered from "occasional auditory hallucinations" and that he would be "[u]nable to work for at least 12 months." (R. at 258–59.)[3] However, Dr. Ang's "medical source statement" reflects that plaintiff had no limitations with simple instructions and only "mild" instructions with complex instructions, and that plaintiff had no impairments in his ability to "interact appropriately with supervision, co-workers, and the public." (R. at 254–55.) Notably, Dr. Ang failed to complete the entire form and left a blank space where the form instructed him to "[i]dentify the factors . . . that support your assessment." (R. at 255.) Faced with "inconsistencies in a treating physician's reports," the ALJ bore "an affirmative duty to seek out more

---

[3] The Court is mindful that blanket opinions regarding an ability to work do not control this Court. See 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'"). Even so, the ALJ was obligated to develop the record further given the conflicts in the record and the sparseness of Dr. Ang's reports. See Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998).

information from the treating physician and to develop the administrative record accordingly." Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998); see also Rosa, 168 F.3d at 80.[4]

In light of these gaps and conflicts in the record, a cursory, 11-minute hearing was insufficient. See Thibodeau v. Commissioner of Soc. Sec., 339 F. App'x 62, 63 (2d Cir. 2009) (finding that "the scant administrative record—the hearing transcript spans fourteen pages—was left undeveloped"); Crespo v. Barnhart, 293 F. Supp. 2d 321, 324–25 (S.D.N.Y. 2003) ("The hearing conducted by the ALJ on November 10, 1998 appears to have lasted only ten minutes . . . hardly enough time fully to develop the record in this case . . . ."). The facts that the claimant appeared pro se and had at least limited English ability rendered the ALJ's error more serious. (R. at 27, 32.)[5] See Rosa, 168 F.3d at 79.

"Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order." Sobolewski v. Apfel, 985 F. Supp. 300, 314 (E.D.N.Y. 1997).

### B. Plaintiff's Remaining Claims

Because the Court remands this decision to the Commissioner to develop the record fully and hold further proceedings, the Court need not address plaintiff's arguments that the ALJ incorrectly analyzed plaintiff's subjective complaints of

---

[4] The Court need not reach plaintiff's allegations that the record was also insufficiently developed as to several other symptoms in light of its decision to remand this case to the Commissioner for further proceedings.
[5] The Court notes that the ALJ's letter requesting plaintiff to submit records from his treating physician was written in English. (See R. at 244–45.)

11

pain[6] and lacked substantial evidence to support his determination. See, e.g., Hankerson, 636 F.2d at 896.

Nonetheless, while the record is insufficiently developed, the Court does note that certain evidence in the record supports the ALJ's finding.[7] For example, while plaintiff claimed a disabling back impairment, no medical source in the record diagnosed a condition other than "low back pain." (See R. at 221–22, 262.)[8] Additionally, treating psychiatrist Dr. Ang opined that plaintiff had no limitations in making simple work-related decisions and that his ability to respond to supervision and interact with coworkers was unimpaired. (R. at 254–55.) Plaintiff also stated on several occasions that his medication helped his condition and that he was feeling less depressed. (See, e.g., R. at 201, 202, 205, 206, 211, 215.) Without a fully developed record, however, an ALJ's "decision to deny [a claimant] benefits is not supported by substantial evidence." Pratts, 94 F.3d at 37.

## IV.  CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings is GRANTED and defendant's motion for judgment on the pleadings is DENIED.

This matter is REMANDED to the Commissioner, who shall:

---

[6] In any event, the Court doubts that an 11-minute hearing is sufficient to assess plaintiff's credibility. See Crespo, 293 F. Supp. 2d at 324–25.

[7] Plaintiff also asserts that defendant's assessment of plaintiff's RFC was "vague." (Pl.'s Mot. 15, ECF No. 14.) That is incorrect. The ALJ appropriately referred to a specific provision of the regulations, 20 C.F.R. § 416.967(b), which sets forth the functions and requirements of light work. (See R. at 19.)

[8] Dr. Silverman reported that a lumbar spine MRI was negative in all respects, and concluded that plaintiff could perform light work. (R. at 262–63.) Dr. Pelczar-Wissner opined that she found no sign of "objective limitations" based on her examination of plaintiff. (R. at 222.) Dr. Patel also completed a functional assessment in which he opined that plaintiff could continuously sit, stand, or walk for two hours each, and that plaintiff could perform various daily living activities. (R. at 246–50.)

1. Request that plaintiff secure complete medical records from all doctors and institutions that treated plaintiff, including Dr. Gutierrez.
2. Request that Dr. Ang substantiate his reports, particularly his finding that plaintiff was "[u]nable to work for at least 12 months." (See R. at 259.)
3. Hold a new administrative hearing.

The Clerk of Court is directed to close the motions at ECF Nos. 13 and 15 and to terminate this action.

SO ORDERED.

Dated: New York, New York
February 3, 2014

_____
KATHERINE B. FORREST
United States District Judge